# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Wisconsin

| | |
|---|---|
| United States of America<br>v.<br>ROBERT BERO,<br>a/k/a "Bodi"<br><br>Defendant(s) | Case No. 14-M-1206 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __between May, 2012-June, 2013__ in the county of __Washington__ in the __Eastern__ District of __Wisconsin__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§841 and 846 | Conspiracy to possess with intent to delver and delivery of methylone, a Schedule I controlled substance. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Mark Gorenc, SA, Drug Enforcement Administration
_____
Printed name and title

Sworn to before me and signed in my presence.

Date: 5/6/14 @ 4:10 p.m.

_____
WILLIAM E. DUFFIN
Judge's signature

City and state: Milwaukee, Wisconsin

U.S. Magistrate Judge
_____
Printed name and title

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Mark Gorenc, being duly sworn, do hereby depose and state:

1. I am a Special Agent with the Drug Enforcement Administration (DEA), assigned to the Milwaukee District Office. I have been employed by DEA since 1996 and have participated in numerous investigations involving drug violations during that time. Prior to being employed with DEA, I was employed as a Police Officer with the Franklin, WI Police Department for six months and as a Deputy Sheriff with the Milwaukee County Sheriff's Department for two years. I make this affidavit based upon personal knowledge derived from my participation in this investigation as well as information provided by other agents of DEA, Intelligence Analysts and Detectives, Investigators and Deputies of the Washington County Sheriff's Department. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrants, I have not included each and every fact known to me concerning this investigation.

2. As part of my duties as a DEA Special Agent, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage and importation of controlled substances.

3. I have received training in the area of narcotics investigations, money laundering, financial investigations and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of narcotics laws. This affidavit does not include all the information known to me, but only include the facts I believe are necessary to establish probable cause to arrest ROBERT BERO aka "Bodi."

4. In 2012, the DEA and Washington County Sheriff's Department began an investigation into a poly-drug group. One of the main drugs the group trafficked in was 3, 4-Methylenedioxy-N-methycathinone Hydrochloride (Methylone). Methylone is also known by the street names "Molly" or "M-1," and is part of a family of synthetic, designer drugs commonly known as "bath salts." Methylone is a Schedule I controlled substance.

5. On May 14, 2012 Investigator Dominguez with the Washington County Multi-Jurisdictional Drug Enforcement Group purchased 9 ½ doses of Blotter Paper for $90.00

1

in U.S. Currency from Robert BERO that BERO was representing as Lysergic Acid Diethylamide (LSD). The drug transaction occurred in the parking lot of the Walgreens located at N168 W21330 Main Street in the Village of Jackson, Washington County, Wisconsin. The drug transaction was audio and video recorded. The drug transaction was arranged with BERO via text messaging. In the text messages, Bero sets up the location and price for the narcotics and also states, when discussing the fact that he will meet to conduct the drug transaction that he "...wil(sic) kil(sic) people if i(sic) go down...."

6. On May 16, 2012 the Blotter Paper was weighed and tested by the State of Wisconsin Crime Laboratory Milwaukee Field Office. The Blotter Paper tested positive for the presence of 4-chloro-2,5-dimethoxyamphetamine (DOC) and the weight was .1116 grams which I know to be an analogue of the Schedule I stimulant 2,5-dimethoxy-4-methyl-amphetamine (DOM); DOM is a Schedule One controlled substance.

7. In September 2012, this investigation focused on John Doe 1 and Jane Doe 1 who were believed to be suppliers of "Molly" in the Washington County area. John Doe 1 and Jane Doe 1 were arrested and taken into custody after delivering Methylone to a CI.

8. John Doe 1 and Jane Doe 1 were both advised of their constitutional rights. Both voluntarily consented to be interviewed and gave statements against their penal interest. As part of his statement, John Doe 1 gave consent to search his storage unit and gave the lock combination to get into the unit. After signing the consent to search form, John Doe 1 told law enforcement that he had the additional ounces of "Molly" hidden in the storage unit. A consent search of the storage unit was conducted by the Washington County Sheriff's Department.

9. Pursuant to the consent search, an additional amount of "Molly" was seized. The seized "Molly" from the CI purchase and storage unit was sent to the North Central Laboratory for analysis and tested positive for 3, 4-Methylenedioxy-N-methylcathinone Hydrochloride (Methylone) with a net total weight of over 600 grams.

10. As part of her statement, Jane Doe 1 advised that one of John Doe 1's larger drug customers was Robert BERO. Jane Doe 1 observed John Doe 1 deliver methylone and marijuana to BERO approximately once a week. During the transactions, John Doe 1 would distribute 1 ounce of methylone and unknown amount of marijuana.

11. On October 10, 2012, Investigator Otte with the Washington County Multi-Jurisdictional Drug Enforcement Group went to a residence located in the Township of Barton, Washington County, Wisconsin. Investigator Otte purchased 4 doses of Blotter Paper and 2 grams of "Molly" for $125.00 from BERO. BERO was

2

representing the Blotter Paper as LSD and the off white crystalline powder "Molly" as MDMA.

12. On October 12, 2012 the Blotter Paper was weighed and tested by the State of Wisconsin Crime Laboratory in Milwaukee Field Office. The Blotter Paper tested positive for the presence of 4-chloro-2,5-dimethoxyamphetamine (DOC) and the weight was 0.0534 grams. The off white crystalline powder tested positive for the presence of 3,4-methylenedioxymethcathinone (Methylone) and the weight was 1.9085 grams. During the drug transaction BERO stated to Investigator Otte that his source of supply currently had 22 Ounces of "Molly" for sale and the price was $1,050.00 per ounce.

13. On 6-24-13 during a custodial interview of BERO, BERO confessed to delivering the DOC to Investigator Dominguez, as well as the DOC and Methylone to Investigator Otte. BERO remembered specific details about each drug transaction. BERO stated that the majority of the drug transactions he conducted occurred at his girlfriend's house located in the Township of Barton, Washington County, Wisconsin. BERO stated that other places he conducted drug transactions were in store parking lots in West Bend, Wisconsin.

14. At the time of BERO's arrest he had in his possession $1,847.00 in U.S. Currency the majority of which were in $20 bill denominations. On June 18, 2012 the Ozaukee County Drug Task Force conducted a controlled drug transaction for 30 doses of suspected LSD on Blotter Paper for $165.00 from one of BERO's known customers. Det. Rank obtained a copy of the prerecorded buy money utilized in the drug transaction, compared the serial numbers to the $1,847.00 that BERO had in his possession at the time of his arrest and observed that two $20 bills matched.

15. During the custodial Interview BERO identified John Doe 1 as his source of supply for DOC, Methylone, and Marijuana. Upon reviewing the interview of BERO and summarizing the frequency and quantities of drugs purchased in a seven month time span, it was determined that from February 2012 to September 2012 BERO purchased approximately 1,484 grams of Methylone, approximately 10,500 doses of DOC, and approximately 2,168 grams of Marijuana from John Doe 1.

16. BERO stated that most of the time he paid John Doe 1 upon receiving the drugs, but there were times that he received the drugs on consignment. BERO stated that he assisted John Doe 1 and in collecting drug debts for John Doe 1, and that John Doe 1 used him as an "enforcer" of sorts because of BERO's size. BERO stated that John Doe 1 depicted himself as a "Drug Lord."

17. On August 26, 2013, law enforcement conducted a proffer debriefing of John Doe 1. John Doe 1 first became involved in methylone aka "Molly" while attending the Madison Media Institute. John Doe 1 estimated that he started purchasing

3

methylone from approximately March 2011. John Doe 1 was distributing all of the methylone in the West Bend, Wisconsin area. John Doe 1 stated that he was distributing the methylone to several customers including but not limited to Robert BERO.